# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| Kathryn Sarkisian, <br><br> Plaintiff, <br><br> v. <br><br> City of the Village of Douglas, Michigan, <br><br> Defendant. | CIVIL ACTION NO.: <br> 1:25-cv-00593-RJJ-SJB <br><br><br> **ORAL ARGUMENT REQUESTED** |

**PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER**

Plaintiff Kathryn Sarkisian ("Kathy") moves under Fed. R. Civ. P. 65 and LR Cv 9 for an order preserving the status quo by temporarily restraining Defendant the City of the Village of Douglas ("City") and its officers, agents, servants, employees, and attorneys (and anyone acting with them) from taking any action under the authority of Ordinance No. 05-2020, *codified at* Douglas, Mich., Muni. Code § 92.32 ("Chicken Ordinance"), to compel Kathy to dispose of six hens she has been raising pursuant to a permit the City issued two years ago, or to fine her up to $300 per day for violating the Chicken Ordinance.

After the City issued Kathy's permit, a single neighbor objected. The City delegates to any adjacent landowner the absolute and unappealable power to veto a permit. *See* Chicken Ordinance § 92.32(D) (if a neighbor objects, a "permit shall not be granted, with no right of appeal"). Under this provision, the City informed Kathy that her permit was revoked and demanded that she remove her chickens, although the City never made the findings necessary to suspend or revoke her permit. *See id.*

1

§ 92.32(J) ("Any permit may be suspended or revoked [. . .] by written notice to the permit holder, upon a finding that the permittee has violated applicable city ordinance provisions or permit conditions.").

Kathy filed this civil rights action because the neighbor-veto provision violates the Fourteenth Amendment in two clear ways. First, the City cannot empower a neighbor to decide how Kathy uses her own land. It "is repugnant to the due process clause" for the government to delegate its sovereign power to regulate land to a private individual. *State of Washington ex rel. Seattle Title Trust Co. v. Roberge*, 278 U.S. 116, 121–22 (1928). Second, by providing "no right of appeal" of a neighbor veto, the Chicken Ordinance creates a "permanent irrebuttable presumption [that has] long been disfavored under the Due Process Clauses of the Fifth and Fourteenth Amendments." *Vlandis v. Kline*, 412 U.S. 441, 446 (1973). The City has given Kathy no notice or hearing, allowed no discussion or debate, failed to follow its own revocation process, and has no administrative procedure by which she might challenge her neighbor's final decision.

But in one week, on June 16, 2025, the City will be seeking an order from a state court that Kathy is keeping chickens without a permit. Absent an order preserving the status quo, any relief this Court might eventually grant is at risk of being rendered meaningless. Without this Court's intervention, Kathy will be subject to a denial of her civil rights and may be under the enormous financial pressure of potentially ruinous fines. And her six chickens will be gone, perhaps never to return.

2

## LOCAL RULE CV 7.3(d) STATEMENT

In accordance with LR Cv 7(d), counsel states that oral argument is requested, and estimates that 20 minutes (10 minutes per side) will be required.

## STATEMENT OF FACTS

In 2020, the City adopted Ordinance No. 05-2020 (entitled "Chicken Permits"), *codified at* Douglas, Mich., Muni. Code § 92.32. The ordinance establishes a permitting process for homeowners to "keep not more than six hen (female) chickens" for personal uses such as "family pets, to lay eggs or for meat [or] for personal consumption[.]" *Id.* § 92.30. If an applicant submits the required form, pays a fee, and conforms to the City's other requirements, the City will issue a permit. However, if any neighbor objects *for any reason* within 21 days of an application, the ordinance requires the permit "shall not be granted, with no right of appeal." *Id.* § 92.32(D).

Initially, no one objected when Kathy submitted her application in June 2023. *See* Decl. of Kathryn Sarkisian ¶¶ 11–15. So the City issued her a Chicken Permit. *Id.* ¶ 16 & Ex. 1 (permit marked "approved"). Relying on that permit, Kathy spent $17,000 to build an indoor coop and outdoor run, to upgrade fences, and to bring her property into compliance with the City's other requirements. *Id.* ¶¶ 17–18.

Kathy then began raising six hens: Isabella, Sunshine, Cinnamon, Sugar, Piper, and Butter. *Id.* ¶ 19. She has raised the birds from birth and bonded with them as pets, in the same way another person would bond with a cat or dog. *Id.* ¶¶ 38, 44 ("my chickens are like family now"). They are not noisy; they do not smell; and she cleans their coop regularly. *Id.* ¶ 28. At no time have they attracted additional critters to the area. *Id.*

3

Less than a month later, however, the City informed Kathy that a neighbor had objected. *Id.* ¶ 25. Despite her permit, the City ordered her to stop raising chickens. *Id.* ¶¶ 26, 31–35. The City further told her she would never be allowed to challenge the neighbor's decision, in any forum, as the ordinance unmistakably states. *Id.* ¶ 26; *see* Chicken Ordinance § 92.32(D) (providing that, when a neighbor objects, a "permit shall not be granted, with no right of appeal").

Kathy values her birds and the nutritious eggs they produce. Sarkisian Decl. ¶¶ 38–42. She has refused to remove them because the City's law is plainly unconstitutional on its face, *id.* ¶ 29, and because the City never sent her written findings revoking her permit, as required by the ordinance. *See* Chicken Ordinance § 92.32(J). Despite complying with the ordinance in all other respects, she is now on the verge of losing her birds and facing financial peril if the City's enforcement action is brought to conclusion next week. Sarkisian Decl. ¶¶ 43–44. Since September 2023, the City has sent her a series of violation notices ordering her to get rid of the chickens and threatening $300 in daily fines. *Id.* ¶¶ 31–35. This past November, the City formally cited her and summoned her to Michigan's 57th Judicial District Court, seeking an order that she violated the Chicken Ordinance. *Id.* ¶¶ 35–37. There have been several delays in bringing her case to trial, but next week, on June 16, the City is seeking to enforce its citation with a final order from the state court. *Id.* ¶¶ 36–37. Meanwhile, fines have continued to mount and, at this point, could exceed $200,000. *Id.* ¶¶ 43–44.

Kathy recently filed a Complaint in this Court challenging the City's power to punish her under the Chicken Ordinance and seeking declaratory and injunctive relief under the Fourteenth Amendment. *See* Compl. for Violation of Const. & Civil Rights (ECF No. 1) (filed May 27, 2025). Through her attorneys, she contacted the City's counsel in the state proceedings and asked them to dismiss the pending citation. The City refused. At a status conference held May 29, 2025, the judge in the state case was made aware of this federal constitutional challenge. Sarkisian Decl. ¶ 37. The judge determined the trial will go forward on June 16, 2025, absent order of this Court. *Id.*

## LEGAL STANDARD

The Court weighs four factors in evaluating a motion for a temporary restraining order: (1) the moving party's likelihood of success on the merits; (2) whether she will suffer irreparable harm without injunctive relief; (3) whether injunctive relief would harm others; and (4) whether injunctive relief would be in the public interest. *Towerco 2013, LLC v. Berlin Twp. Bd. of Trs.*, 110 F.4th 870, 879 (6th Cir. 2024).

These four factors are "not prerequisites that must be met, but are interrelated considerations that must be balanced together." *Ne. Ohio Coal. for the Homeless & Serv. Emps. Int'l Union, Loc. 1199 v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006) (citation omitted). "For example, the probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury the

movants will suffer absent the stay." *Id*. The latter two factors "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

## ARGUMENT

Plaintiff satisfies all four injunction factors. As shown below, (1) her probability of success is exceptionally high because two Supreme Court cases directly on point show that the Chicken Ordinance runs counter to the Fourteenth Amendment. (2) Irreparable injury is presumed where, as here, a person has been denied federal constitutional protections. (3) No one would be harmed by enjoining the City from enforcing the Chicken Ordinance—in fact, Kathy has been raising chickens in compliance with all other local laws for two years and maintaining that status quo, for now, would leave everyone in the same position they are in today. And, finally, (4) injunctive relief would be in the public interest because enjoining an unconstitutional law is always in the public interest.

### I. Plaintiff Is Likely to Succeed on the Merits

On its face, the Chicken Ordinance violates the Fourteenth Amendment because it gives neighboring landowners an absolute and unreviewable right to veto the keeping of chickens on adjoining private land and denies any semblance of due process when neighbors object. Those provisions are "flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it." *Moore v. Sims*, 442 U.S. 415, 432 (1979) (quotation omitted) (recognizing that federal courts need not abstain due to parallel state court proceedings when the

6

plaintiff challenges a patently unconstitutional law). As shown below, Kathy is likely to succeed on the merits because the Chicken Ordinance is patently unconstitutional.

### A. The ordinance is an unconstitutional delegation of government power to private individuals

For almost a century, the Supreme Court has recognized that the Fourteenth Amendment's Due Process Clause prohibits local governments from delegating their sovereign power over land use decisions to private individuals. *State of Washington ex rel. Seattle Title Tr. Co. v. Roberge*, 278 U.S. 116, 121–22 (1928). In *Roberge,* a Seattle zoning ordinance required philanthropic homes for children and the elderly to obtain the consent of neighbors to support an application for a zoning permit. *Id*. at 118. When the owner of a group home for the elderly applied to the city for a permit without neighbor consent, zoning officials were compelled to deny the permit. *Id*. at 119. The group-home-owner sought an injunction requiring issuance of the permit. *Id*. The U.S. Supreme Court ordered the city to issue the permit and declared the ordinance invalid under the Due Process Clause. *Id*. at 122–23.

*Roberge* dictates the outcome of this case. Just like in *Roberge*, "there is no provision for review under the ordinance" and the neighbors' "failure to give consent is final." *See id*. at 122. To identical effect, the Douglas ordinance requires that a "permit shall not be granted, with no right of appeal" whenever an adjacent landowner objects to the keeping of chickens. Chicken Ordinance § 92.32(D).

In contravention to this "express constitutional prohibition," the City has delegated its land use decisions to private individuals and forever insulated their

7

private decisions from any form of review. All decisions are final. So like the neighbors in *Roberge*, Kathy's neighbor can give or withhold their consent for any reason—or no reason. But an owner's constitutional right to use her property for otherwise lawful purposes may not be subject to the "whim" or "caprice" of neighbors, who exercise public power "not bound by any official duty." *Roberge*, 278 U.S. at 122; *see also Oklahoma v. United States*, 62 F.4th 221, 228 (6th Cir. 2023) ("the government may not empower a private entity to exercise unchecked legislative or executive power").

Like the neighbor-consent requirement struck down in *Roberge*, the Chicken Ordinance is "repugnant to the due process clause of the Fourteenth Amendment." *Roberge*, 278 U.S. at 122. Accordingly, Plaintiff is very likely to succeed on her challenge to the Chicken Ordinance's delegation of public power to private individuals.

### B. The ordinance denies procedural due process

Plaintiff is also likely to succeed for another reason: The Chicken Ordinance denies any semblance of procedural due process by creating an unreviewable and irrebuttable presumption based on one neighbor's objection. *See* Chicken Ordinance § 92.32(D) (providing that, if any neighbor objects for any reason, the chicken permit "shall not be granted, with no right of appeal"). "Statutes creating permanent irrebuttable presumptions have long been disfavored under the Due Process Clauses of the Fifth and Fourteenth Amendments." *Vlandis v. Kline*, 412 U.S. 441, 446 (1973).

8

"The fundamental requisite of due process of law is the opportunity to be heard." *Ingram v. Wayne Cnty.*, 81 F.4th 603, 613 (6th Cir. 2023), *abrogated on other grounds by Culley v. Marshall*, 601 U.S. 377 (2024) (quotation omitted). "[W]herever one is assailed in his person or his property, there he may defend." *Boddie v. Connecticut*, 401 U.S. 371, 377 (1971) (quoting *Windsor v. McVeigh*, 93 U.S. 274, 277 (1876)). The essence of procedural due process is, therefore, the requirement that "a person in jeopardy of serious loss [be given] notice of the case against him and opportunity to meet it" via "some form of hearing." *Mathews v. Eldridge*, 424 U.S. 319, 333, 348 (1976).

On its face, the ordinance requires that a permit "shall not be granted, with no right of appeal," Chicken Ordinance § 92.32(D), whenever a neighbor objects. A neighbor's veto is functionally final and unreviewable—there is no hearing, no discussion, no debate, and no appeal to a neutral decisionmaker, such as the City Council, hearings officer, or judge. That is a textbook denial of procedural due process and, therefore, Plaintiff is likely to succeed on that claim, too.

## II. Irreparable Harm

Absent this Court's intervention, Plaintiff will suffer irreparable harm in four distinct ways—the constitutional injury, losing her pets and livestock, incurring financial penalties beyond what she can bear, and the substantial risk of mooting this case if the City successfully compels her to get rid of her chickens.

Where, as here, a plaintiff alleges the ongoing denial of constitutional rights, irreparable harm is presumed. The loss of "freedoms, for even minimal periods of

9

time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). This principle applies to all fundamental constitutional protections, including due process rights. *See, e.g.*, *Doe v. Univ. of Cincinnati*, 872 F.3d 393, 407 (6th Cir. 2017) ("When constitutional rights are threatened or impaired, irreparable injury is presumed.").

Enforcement of the ordinance would also compel Plaintiff to destroy or permanently part with her six chickens—animals she views not only as livestock, but as beloved pets. Plaintiff has cared for these chickens daily for two years and considers them part of her family. Courts have recognized the forced removal or destruction of companion animals constitutes serious emotional harm, and that emotional harm itself may constitute irreparable harm. *Porretti v. Dzurenda*, 11 F.4th 1037, 1050 (9th Cir. 2021). Once the animals are removed, this injury cannot be undone. *See, e.g.*, *Fund for Animals v. Clark*, 27 F. Supp. 2d 8 (D.D.C. 1998) (holding plaintiffs' "aesthetic interest" in bison as "pets" would be irreparably harmed without injunctive relief); *Fund for Animals v. Espy*, 814 F. Supp. 142 (D.D.C. 1993) (similar).

Moreover, the City's enforcement letters threaten Plaintiff with fines of up to $300 per day, dating back nearly two years, which could amount to over $200,000 in fines. These penalties are not only financially ruinous but also coercive—meant to pressure Plaintiff into compliance before her constitutional claims can be adjudicated. The financial burden is immediate and severe, especially for a small-business owner supporting a disabled spouse and elderly mother. Sarkisian Decl.

¶¶ 7–10. Courts have held that monetary harms can constitute irreparable injury where the financial loss is so severe that it threatens the plaintiff's livelihood or solvency. *See Doran v. Salem Inn, Inc.*, 422 U.S. 922, 931 (1975) (holding that "severe" financial pressures caused by enforcement of likely unconstitutional ordinance supported injunctive relief).

Finally, a state court proceeding is currently pending, with trial scheduled next Monday. A judgment requiring Plaintiff to remove the chickens would effectively moot this federal constitutional challenge. Once the animals are removed or destroyed, there will be no meaningful way for Plaintiff to obtain full relief. *See* Sarkisian Decl. ¶ 29 ("I have nowhere to take them."). The threat of such enforcement, combined with the absence of a federal forum to consider her constitutional claims in time, presents classic irreparable harm justifying immediate equitable intervention.

### III. Balancing the Equities

The public would in no way be harmed by a temporary restraining order preventing the City from acting unconstitutionally. *See Tirrell v. Edelblut*, 747 F. Supp. 3d 310, 319 (D. N.H. 2024) ("The State has no interest in enforcing an unconstitutional law, [and] the public interest is harmed by the enforcement of laws repugnant to the United States Constitution.") (internal quotation omitted). At the same time, the City's actions would permanently deprive Plaintiff of her private property rights and cause her irreparable injury in the loss of her birds.

11

There is no risk to the City or any third party from Kathy continuing to keep her chickens. After all, the City has issued her a permit to do so, chickens are allowed in her zoning district, and she has kept the birds on her land for the last two without incident. *Id.* For its part, the City is acting unconstitutionally in summarily treating her chicken permit as suspended or revoked, seeking to remove Kathy's chickens, and impose punishing fines. But no one has been harmed, or will be harmed, by allowing Kathy to keep her chickens while she pursues this civil rights lawsuit. She seeks only to maintain the status quo to prevent the loss of her property until this Court has an opportunity to rule on the important constitutional claims raised by this suit. The City would remain free to exercise all its other functions.

## IV. Injunctive Relief Would Allow This Court to Consider Substantial Federal Constitutional Claims that Serve the Public Interest

The public interest is best served by maintaining the status quo while this Court considers the constitutionality of the Chicken Ordinance. Two years ago, the City gave Kathy Sarkisian permission to keep six hens in her back yard. The birds have been there ever since. The City purported to summarily revoke Kathy's permit *after the fact* based on one neighbor's objection. But maintaining the status quo will keep things just as they have been for two years while in no way negatively impacting the wider public.

Indeed, the public always has an interest in adjudicating federal constitutional disputes. The public interest is also served by ensuring that the federal constitutional and statutory restrictions and limitations of the City's authority, and federal remedies, are not mooted by the City's actions after the filing

of the complaint. *See Berge v. Sch. Comm. of Gloucester*, 107 F.4th 33, 39 n.9 (1st Cir. 2024) ("Suits involving obviously unlawful acts do not land on our docket every day."). In other words, the City's patently unconstitutional Chicken Ordinance should not be allowed to escape challenge in federal court.

## CONCLUSION

This Court should issue a temporary restraining order requiring Defendant Douglas, Michigan, to pause enforcement of the Chicken Ordinance against Kathryn Sarkisian until further order of this Court.

DATED: June 9, 2025.

Respectfully submitted,

Pacific Legal Foundation

/s/ Wesley Hottot
Wesley Hottot, Wash. St. Bar No. 47539
Austin Waisanen, Wyo. St. Bar No. 8-7023
3100 Clarendon Blvd, Suite 1000
Arlington, VA 22201
Telephone: (202) 888-6881
WHottot@pacificlegal.org
AWaisanen@pacificlegal.org

Christina M. Martin, Fla. Bar No. 0100760
4440 PGA Blvd., Suite 307
Palm Beach Gardens, FL 33410
Telephone: (561) 691-5000
CMartin@pacificlegal.org

Thomas Joffre Lambert, Jr. P86348
Thomas J. Lambert, PLC
PO Box 144
Jamestown, Michigan 49427
Telephone: (616) 275-2976
tlambert@tjlplc.com
*Attorneys for Plaintiff*

13

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document and its attachments were served upon the Defendant via personal service no later than June 10, 2025 at the following place of business:

> City of the Village of Douglas, Michigan
> 86 West Center Street
> Douglas, Michigan 49406

In addition, on June 9, 2025, an electronic courtesy copy of the foregoing and its attachments were provided to the City's Counsel in the related state proceedings:

> James E. Burnett, P22816
> 313 Hubbard St
> Allegan, MI 49010
> office@law-bk.com

/s/ Wesley Hottot
Wesley Hottot
